# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MATTHEW RICHARD PALMIERI,

    **Plaintiff,**

    **v.**

UNITED STATES OF AMERICA, et al.,

    **Defendants.**

Civil Action No. 12-1403 (JDB)

## <u>MEMORANDUM OPINION</u>

Plaintiff Matthew Richard Palmieri, a former contractor for the United States, brings this 30-count action against various government agencies and officials[1] (collectively "the United States" or "the government"). Proceeding pro se, Palmieri claims that his industrial security clearance was revoked after the government conducted an investigation of his activities. He challenges the investigation, the subsequent administrative hearing, the loss of his security clearance, and the government's responses to his document requests. Upon careful consideration of the several motions and the parties' various memoranda,[2] the applicable law, and the record, and for the reasons set forth below, the Court will reject most of Palmieri's claims.

---

[1] The named defendants are: the United States; the Naval Criminal Investigative Service ("NCIS"); NCIS Agent Maya Lena Pilatowicz; NCIS Agent Edward Jones; NCIS Agent Lynda G. Carpenter; NCIS Deputy Assistant Director Katherine Smith; other unknown NCIS agents; the Office of Naval Intelligence ("ONI"); ONI Employee Marie Stickney; ONI Employee "Jane Doe"; ONI Director David John Dorsett; the United States Army; the Defense Security Service ("DSS"); DSS Director Stanley L. Sims; DSS Chief Financial Officer Barry E. Sterling; DSS Employee David Bauer; other unknown DSS employees; the Defense Office of Hearing and Appeals ("DOHA"); the Department of Defense ("DOD"); the Office of Personnel Management ("OPM"); the Defense Manpower Data Center ("DMDC"); the Financial Crimes Enforcement Network ("FinCEN"); the Department of State ("DOS"); and the Central Intelligence Agency ("CIA").

[2] Defs.' Mot. to Dismiss, to Sever, for a More Definite Statement, or for Summ. J. [ECF No. 26] ("Defs.' Mot."); Pl.'s Opp'n to Defs.' Mot. [ECF No. 37] ("Pl.'s Opp'n"); Defs.' Reply to Pl.'s Opp'n [ECF No. 43] ("Defs.' Reply"); Pl.'s Mot. for Partial Summ. J. [ECF No. 44] ("Pl.'s Mot."); Defs.' Opp'n to Pl.'s Mot. [ECF No. 46] ("Defs.' Opp'n"); Pl.'s Reply to Defs.' Opp'n [ECF No. 47] ("Pl.'s Reply"); Pl.'s Mot. for Preservation of Evidence [ECF No. 48].

## BACKGROUND

According to the complaint, Palmieri held an industrial security clearance for over a decade as a government contractor. Am. Compl. [ECF No. 14] at 12.[3] Palmieri worked as "a systems engineer specializing in classified military communications systems." Id. He alleges that, after a several-month-long government investigation into his activities and a subsequent hearing before an administrative judge, his security clearance was revoked in 2011. Id. at 12–41. He now brings this action challenging various aspects of the investigation and its aftermath.

When the investigation began, Palmieri was residing in Bahrain and working as a government contractor. Id. at 13–15. He learned that an investigation "might be underway targeting [him] around Christmas of 2009 or New Year[']s 2010." Id. at 15. As part of the investigation, government officials allegedly accessed Palmieri's Facebook account. Id. at 15–16. They also "seized [Palmieri's] work emails" and "hard drives from multiple office computers at [his] desk," reviewed his phone records, and used a "surveillance system" to "capture" his work emails and "any other available Internet activity" on his work computer system. Id. at 17, 24–25. Palmieri further claims that government officials engaged in physical and vehicular surveillance of him in Bahrain. Id. at 19, 75. Also as part of the investigation, Palmieri asserts that he was "interrogated inside the NCIS Middle East Field Office in Bahrain," during which he was told: "you are here voluntarily and you are free to leave[,] but if you don't talk to us[,] we are going to recommend your security clearance be suspended." Id. at 20.

In May 2010, after much of the investigation apparently had been completed, the government recommended that Palmieri's security clearance be suspended. Id. at 22. Palmieri

---

[3] Palmieri failed to abide by Federal Rule of Civil Procedure 10(b), which instructs petitioners to present their claims in numbered paragraphs. The Court will therefore refer to the page numbers of his complaint throughout this opinion. For the purposes of defendants' motion to dismiss, the well-pleaded allegations of plaintiff's complaint will be taken as true. Sissel v. U.S. Dep't of Health and Human Servs., 760 F.3d 1, 4 (D.C. Cir. 2014).

alleges that he was then escorted from his office, and government officials searched his office area.  Id. at 23.  Later, on July 19, 2011, "at [the government's] request," Palmieri took a polygraph test.  Id. at 25.  Prior to the test, Palmieri "was read a Miranda warning and asked to sign a paper acknowledging it."  Id.  Palmieri was asked if he had committed unauthorized disclosures of national defense information and if he was currently in possession of any unauthorized classified materials.  Id. at 25–26.  Palmieri claims that government officials believed "deception was indicated" by his negative responses to the questions, and as a result, an official requested permission to search Palmieri's home.  Id.  Palmieri declined to give permission.  Id.

On August 24, 2011, Palmieri's security clearance was officially suspended.  Id. at 30.  Palmieri was "'released without prejudice,' or fired," from his position "based wholly on the suspension" of his security clearance.  Id. at 31.  The United States later provided Palmieri with a "Statement of Reasons," which "constituted the Government's formal allegations against [him]."  Id. at 33.  Of the twenty-seven allegations, Palmieri admitted to some, which alleged that he knew particular individuals and that he maintained a foreign bank account worth more than $300, and he denied the remainder.  Id.

The government then provided Palmieri with notice that a hearing before a DOHA Administrative Judge regarding his security clearance would be held on November 7, 2012, in Arlington, Virginia.  Id. at 34.  In pre-hearing communications, the government told Palmieri that it would not call any witnesses.  Id.  Palmieri alleges that the "hearing was mostly uneventful except for extensive discussions surrounding" the government's allegation that:

> In approximately June 2009, [Palmieri] introduced a United States military member to two Syrian nationals associated with the Syrian diplomatic establishment in Manama, Bahrain and subsequently asked the military member

not to disclose [Palmieri's] association with said Syrian nationals to anyone inside the United States government.

Id.; see also Ex. 2 to Defs.' Mot., Nov. 27, 2012 DOHA Opinion [ECF No. 26-2] ("Nov. 27, 2012 DOHA Opinion") at 2, 4.[4]  Palmieri claims that he "complained that this allegation was hearsay unsupported by an in-hearing witness testifying in-person, under oath, and subject to cross-examination." Am. Compl. at 34.  The government exhibit supporting this allegation was a letter from NCIS to DSS discussing "a report by a reserve military member" about this allegation.  Nov. 27, 2012 DOHA Opinion at 2; see also Ex. 29 to Pl.'s Opp'n [ECF No. 37-29] ("NCIS Letter"); Ex. 12 to Pl.'s Mot. (same).  The Administrative Judge admitted the evidence "into the record under an exception to the Hearsay Rule."  Am. Compl. at 36.  The Administrative Judge also noted that Palmieri "knew the identity of the reserve military member" and that the Administrative Judge had allowed Palmieri to "request the reserve military member as a witness," had offered to "ask Department Counsel to locate her and seek her testimony," and had given Palmieri until November 15, 2012, to decide whether to call the reserve military member, but that Palmieri declined to call her.  Nov. 27, 2012 DOHA Opinion at 2.

On November 27, 2012, the Administrative Judge issued his decision, which "found against [Palmieri]" on the reserve-military-member allegation.  Am. Compl. at 36.  The Administrative Judge found that:

> [Palmieri] has not accepted responsibility for his conduct with the reserve military member.  I found him evasive and less than completely forthcoming at the hearing.  Without complete candor, I am unable to find that [Palmieri] has learned from the experience and such behavior is unlikely to recur.  No mitigating

---

[4] The Court will consider in its analysis of the defendants' motion to dismiss the two DOHA opinions—from November 27, 2012, and March 14, 2013—as well as the exhibit (a letter from NCIS to DSS) that Palmieri challenged in both DOHA hearings, because Palmieri references these documents in his complaint and because they are central to some of his claims.  See, e.g., Vanover v. Hantman, 77 F. Supp. 2d 91, 98 (D.D.C. 1999), aff'd, 38 F. App'x 4 (D.C. Cir. 2002) (holding that, when a document is referred to in a complaint and is central to a plaintiff's claim, the court may consider it without converting the motion to dismiss into one for summary judgment).

conditions apply. . . . Overall, the record evidence leaves me with questions and doubts as to [Palmieri's] eligibility and suitability for a security clearance.

Nov. 27, 2012 DOHA Opinion at 10–11. Based on the record before him, the Administrative Judge concluded that "it is not clearly consistent with the national interest to continue [Palmieri's] eligibility for a security clearance," and denied Palmieri's "[e]ligibility for access to classified information." Id. at 11.

Palmieri appealed the Administrative Judge's decision, arguing that the NCIS Letter should not have been admitted into evidence because it contained hearsay. Am. Compl. at 36–37. After hearing his appeal, DOHA's Appeal Board affirmed the Administrative Judge's decision, stating that "hearsay was admissible in industrial security clearance proceedings and that [Palmieri did] not maintain any Right of Confrontation or cross-examination if the allegations are contained within this admissible hearsay." Id. That opinion states:

> [W]e have consistently held that [DOD Directive 5220.6 (Jan. 2, 1992, as amended)] ¶ E3.1.22 does not provide a right of cross examination concerning out-of-hearing statements that are admissible under other provisions of the Directive. . . . One such provision [encompasses] . . . the FRE's panoply of exceptions. Another . . . states: "[o]fficial records or evidence compiled or created in the regular course of business . . . may be received and considered by the Administrative Judge without authenticating witnesses, provided that such information has been furnished by an investigative agency pursuant to its responsibilities . . . to safeguard classified information . . . ."

Ex. 1 to Defs.' Mot., Mar. 14, 2013 DOHA Opinion [ECF No. 26-1] ("Mar. 14, 2013 DOHA Opinion") at 4–5. The Appeal Board determined that the NCIS Letter could be admitted without an authenticating witness because it was compiled in the regular course of agency operations: it was "[p]repared on NCIS letterhead," related to matters that fell within the agency's purview, and was not "generated merely in anticipation of a DOHA hearing." Id. at 5.

Before this Court, Palmieri's lawsuit broadly "challenges th[e] investigation [of him], the techniques used in it, [and] the damages the investigation caused [him], and demands all records

held by various government agencies which were used and created during the investigation." Pl.'s Opp'n at 15. Palmieri also challenges the administrative proceedings before DOHA.

## LEGAL STANDARDS

### I.     MOTION TO DISMISS UNDER RULE 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action for lack of subject-matter jurisdiction. Subject-matter jurisdiction is both a statutory requirement and an Article III requirement. Akinseye v. District of Columbia, 339 F.3d 970, 971 (D.C. Cir. 2003). The plaintiff bears the burden of demonstrating that jurisdiction exists. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

When reviewing a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), a court must construe the complaint liberally, granting the plaintiff the benefit of all inferences that can be derived from the facts alleged. Barr v. Clinton, 370 F.3d 1196, 1199 (D.C. Cir. 2004). Nonetheless, "the court need not accept factual inferences drawn by plaintiff[] if those inferences are not supported by facts alleged in the complaint, nor must the court accept plaintiff['s] legal conclusions." Speelman v. United States, 461 F. Supp. 2d 71, 73 (D.D.C. 2006). Additionally, a court may consider material other than the allegations of the complaint in determining whether it has jurisdiction to hear the case, as long as it still accepts the factual allegations in the complaint as true. See, e.g., Settles v. U.S. Parole Comm'n, 429 F.3d 1098, 1107 (D.C. Cir. 2005); EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 n.3 (D.C. Cir. 1997).

### II.     MOTION TO DISMISS UNDER RULE 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of an action for lack of personal jurisdiction. To establish jurisdiction, a plaintiff must allege "specific facts upon which personal jurisdiction may be based," Blumenthal v. Drudge, 992 F. Supp. 44, 53 (D.D.C. 1998),

and cannot rely on conclusory allegations, <u>Elemary v. Philipp Holzmann AG</u>, 533 F. Supp. 2d 116, 121–22 (D.D.C. 2008).

### III.    MOTION TO DISMISS UNDER RULE 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted."  To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,'" in compliance with Rule 8, "in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). Although "detailed factual allegations" are not necessary, plaintiffs must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to provide the "grounds" of "entitle[ment] to relief."  <u>Twombly</u>, 550 U.S. at 555 (internal quotation marks and citation omitted).   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570); <u>accord</u> <u>Atherton v. D.C. Office of the Mayor</u>, 567 F.3d 672, 681 (D.C. Cir. 2009).  A court need not accept as true, however, legal conclusions set forth in a complaint.  <u>Ashcroft</u>, 556 U.S. at 679.

Unlike motions to dismiss under Rule 12(b)(1), factual challenges are not permitted under Rule 12(b)(6) and the Court "may only consider the facts alleged in the complaint, any documents attached as exhibits thereto, and matters subject to judicial notice in weighing the merits of the motion."  <u>Kursar v. Transp. Sec. Admin.</u>, 581 F. Supp. 2d 7, 14 (D.D.C. 2008), <u>aff'd</u>, 442 F. App'x 565 (D.C. Cir. 2011).  When a document is referred to in a complaint and is central to a plaintiff's claim, however, the court may consider it without converting the motion to

dismiss into one for summary judgment. See, e.g., Solomon v. Office of the Architect of Capitol, 539 F. Supp. 2d 347, 349–50 (D.D.C. 2008).

## IV. SUMMARY JUDGMENT

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In a motion for summary judgment under the APA, "the standard set forth in Rule 56(a) does not apply because of the court's limited role in reviewing the administrative record." Coe v. McHugh, 968 F. Supp. 2d 237, 239 (D.D.C. 2013). "[I]t is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, whereas the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." Univ. of Mass. v. Kappos, 903 F. Supp. 2d 77, 84 (D.D.C. 2012) (internal quotation marks and citation omitted). Accordingly, "district courts reviewing agency action under the APA's arbitrary and capricious standard do not resolve factual issues, but operate instead as appellate courts resolving legal questions." James Madison Ltd. by Hecht v. Ludwig, 82 F.3d 1085, 1096 (D.C. Cir. 1996). "[T]he court considers whether the agency acted within the scope of its legal authority, whether the agency has explained its decision, whether the facts on which the agency purports to have relied have some basis in the record, and whether the agency considered the relevant factors." Fund for Animals v. Babbitt, 903 F. Supp. 96, 105 (D.D.C. 1995).

**<u>DISCUSSION</u>**

Palmieri has voluntarily dismissed Counts 28 and 30 of his amended complaint; all of his Administrative Procedure Act claims in relation to the denial of records; his common-law claims against the United States and its employees acting in their official capacities; and his claims for equitable relief against the individual defendants.  <u>See</u> Pl.'s Stip. of Dismissal [ECF No. 38]; <u>see also</u> Pl.'s Opp'n at 13–14.  Of Palmieri's remaining claims, many are barred by <u>Department of Navy v. Egan</u>, 484 U.S. 518 (1988), and therefore will be dismissed because this Court lacks jurisdiction over them.  The Court also lacks jurisdiction over Palmieri's remaining Stored Communications Act claims.  Palmieri's <u>Bivens</u> claim will be dismissed because the Court lacks personal jurisdiction over the individual defendants.  Nearly all the rest of Palmieri's claims— brought under the Fifth Amendment, the Fourth Amendment, the First Amendment, the Foreign Intelligence Surveillance Act ("FISA"), and the Privacy Act—will be dismissed for failure to state a claim upon which relief can be granted.  Summary judgment, however, will be granted in favor of the United States on the APA portion of Count 21.  Finally, the Court will order Palmieri to provide a more definite statement regarding his six remaining claims under the Freedom of Information Act ("FOIA") and the Privacy Act.

## I. CHALLENGES RELATED TO THE INVESTIGATION, SUSPENSION, AND REVOCATION OF PALMIERI'S SECURITY CLEARANCE (COUNTS 1–3, 7–9, 13, 16, 19, 20, & 22)

The President's Article II Commander-in-Chief powers include the "authority to classify and control access to information bearing on national security," which the President has delegated to executive agencies through a series of Executive Orders.  <u>Egan</u>, 484 U.S. at 527–28.  As such, "the grant of security clearance to a particular employee, a sensitive and inherently discretionary judgment call, is committed by law to the appropriate agency of the Executive Branch."  <u>Id.</u> at 527; <u>accord</u> <u>Oryszak v. Sullivan</u>, 576 F.3d 522, 525–26 (D.C. Cir. 2009).  These

agencies have "broad discretion to determine who may have access" to classified information, and "it is not reasonably possible for an outside nonexpert body to review the substance of such a judgment." Egan, 484 U.S. at 529. Consequently, the "strong presumption in favor of" judicial review of administrative decisions "runs aground when it encounters concerns of national security." Id. at 527.

Because "federal courts do not have the authority to adjudicate cases that would require the fact-finder to second-guess the propriety of an agency's security clearance decisions," Bland v. Johnson, --- F. Supp. 2d ---, 2014 WL 4347191, at *3 (D.D.C. Sept. 2, 2014), federal courts do not have jurisdiction over actions contesting a security clearance investigation, suspension, or revocation. This is so because a court would have to inquire into and pass judgment on the propriety of the agency's security determinations in order to find that improper considerations, rather than an agency's stated security clearance concerns, were the reason for the investigation, suspension, or revocation. See id.; Egan, 484 U.S. at 523–24. Hence, to the extent a plaintiff challenges the decisions of governmental agencies and officials to investigate, to suspend, or to revoke his security clearance, "Egan makes such claims nonjusticiable, and the Court lacks jurisdiction to address them." Burns-Ramirez v. Napolitano, 962 F. Supp. 2d 253, 258 (D.D.C. 2013); see also Oryszak v. Sullivan, 565 F. Supp. 2d 14, 23 (D.D.C. 2008), aff'd, 576 F.3d 522 (D.C. Cir. 2009) (finding that "the Secret Service's decision to revoke [plaintiff's] security clearance was a decision committed to agency discretion by law"); Becerra v. Dalton, 94 F.3d 145, 149 (4th Cir. 1996) ("The question of whether the Navy had sufficient reasons to investigate the plaintiff as a potential security risk goes to the very heart of the 'protection of classified information [that] must be committed to the broad discretion of the agency responsible, and this

must include broad discretion to determine who may have access to it.'" (quoting Egan, 484 U.S. at 529)).

In Rattigan v. Holder, 689 F.3d 764 (D.C. Cir. 2012), this Circuit recognized a narrow exception to the general premise that courts lack jurisdiction to review security clearance decisions.  There, in the context of a Title VII employment retaliation case, the Circuit held that Egan's "absolute bar on judicial review" does not apply where a plaintiff could show that an employee acted with retaliatory and discriminatory motives in knowingly making false reports about the plaintiff to security personnel.  Id. at 768; see also Burns-Ramirez, 962 F. Supp. 2d at 258.  The Circuit's rationale was that Egan shields only decisions made by individuals and agencies authorized and trained to make security clearance determinations or recommendations, not the allegedly discriminatory actions of other employees who merely refer matters to security personnel.  Rattigan, 689 F.3d at 768–70.

Here, many of Palmieri's claims directly implicate agency decisions regarding his security clearance, and none fall within the narrow exception defined by Rattigan.[5]  Because Palmieri's claims would require this Court to question discretionary agency decisions regarding a security clearance investigation, suspension, and revocation, the Court does not have jurisdiction to review these claims in light of Egan.  Accordingly, Counts 1–3, 7–9, 13, 16, 19, 20, and 22 will be dismissed.

## II.    STORED COMMUNICATIONS ACT CLAIMS (COUNTS 5 AND 15)

Palmieri argues that he is entitled to equitable relief because the government violated the Stored Communications Act ("SCA"), 18 U.S.C. § 2701, when it accessed Palmieri's workplace

---

[5] Counts 1 and 2 challenge the government's decision to create a security clearance investigation record of Palmieri; Counts 3, 7–9, 16, and 22 challenge the government's decision to conduct a security clearance investigation of Palmieri and the government's decisions regarding the security clearance investigation itself; and Counts 13, 19, and 20 challenge the government's decisions to close the security clearance investigation of Palmieri, to suspend his security clearance, and to revoke his security clearance.

email and internet activity as part of its security clearance investigation of him. But there is no waiver of sovereign immunity for equitable claims against the government under the SCA. <u>See Kelley v. Fed. Bureau of Investigation</u>, --- F. Supp. 3d ---, 2014 WL 4523650, at *19 (D.D.C. Sep. 15, 2014); <u>see also</u> 18 U.S.C. § 2712(a), (d). Hence, the SCA does not provide a basis for Palmieri's claim against the government. Moreover, "the waiver of sovereign immunity [for monetary damages] in section 2712 is only triggered after the plaintiff presents his or her claim 'to the appropriate department or agency under the procedures of the Federal Tort Claims Act, as set forth in title 28, United States Code.'" <u>Kelley</u>, 2014 WL 4523650, at *19 (quoting 18 U.S.C. § 2712(b)). Palmieri has not alleged that he presented his SCA claims to the appropriate department or agency prior to this lawsuit. For these reasons, this Court lacks jurisdiction over Palmieri's SCA claims, which must be dismissed.

### III. <u>BIVENS</u> CLAIM (COUNT 12)

<u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), recognizes in certain circumstances "an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." <u>Corr. Servs. Corp. v. Malesko</u>, 534 U.S. 61, 66 (2001). Palmieri asserts a <u>Bivens</u> claim against several individual government officers—"Pilatowicz, Jones, and other unknown named NCIS agents"—for a purported "unconstitutional police interrogation" that occurred in Bahrain. Am. Compl. at 78. When a plaintiff seeks relief against individual defendants, the Court must have personal jurisdiction over those individuals to enter a binding judgment. Here, however, the Court lacks

personal jurisdiction over Pilatowicz and Jones and the other "unknown named NCIS agents," and so this claim must be dismissed.[6]

To establish personal jurisdiction, the plaintiff must allege specific acts connecting the defendant with the forum, Second Amendment Found. v. U.S. Conference of Mayors, 274 F.3d 521, 524 (D.C. Cir. 2001), and "cannot rely on conclusory allegations," Atlantigas Corp. v. Nisource, Inc., 290 F. Supp. 2d 34, 42 (D.D.C. 2003).  Here, the only specific contact that Palmieri identifies between the individual defendants and this District is their employment by a federal agency once headquartered in the District.  Am. Compl. at 5–8.  "A person's status as a government employee who works for an agency headquartered in Washington, D.C., however, does not constitute contacts sufficient to subject him to this Court's personal jurisdiction." Scurlock v. Lappin, 870 F. Supp. 2d 116, 121 (D.D.C. 2012) (citing Ali v. District of Columbia, 278 F.3d 1, 7 (D.C. Cir. 2002); Akers v. Watts, 740 F. Supp. 2d 83, 92 (D.D.C. 2010); Pollack v. Meese, 737 F. Supp. 663, 666 (D.D.C. 1990)).  Without more, then, Palmieri has failed to show that the Court has personal jurisdiction over the defendants in their individual capacities.  This claim will therefore be dismissed.

## IV.    FIFTH AMENDMENT DUE PROCESS AND ADMINISTRATIVE PROCEDURE ACT CLAIMS (COUNT 21)

Palmieri alleges that the United States violated his Fifth Amendment due process rights and acted "arbitrarily and capriciously" under the Administrative Procedure Act ("APA") in the course of his security clearance administrative hearing when it (1) "denied his right to cross-examine a witness [the reserve military member] providing an adverse statement"; (2) "refused to officially name and identify [its] witness"; and (3) "hampered [Palmieri's] access to witnesses via

---

[6] The two named Bivens defendants—Pilatowicz and Jones—waived objections to the absence of proper service, but they did not waive their right to contest the Court's jurisdiction.  See Service Waivers [ECF Nos. 33, 36].

13

the execution of non-disclosure agreements." Pl.'s Mot. at 1–2; Am. Compl. at 110–114. Palmieri's claims that the government refused to name witnesses and hampered Palmieri's access to witnesses fail to meet the requirements of Rule 8, and will therefore be dismissed. His due process claim that the government denied his right to cross-examine the reserve military member will also be dismissed. Finally, the Court will grant summary judgment in favor of the government on Palmieri's remaining APA claim regarding the cross-examination issue.

### A. Claims That The Government Refused To Name Its Witness and Hampered Access to Witnesses

The Court has reviewed Palmieri's complaint, "keeping in mind that complaints filed by pro se litigants are held to less stringent standards than those applied to formal pleadings drafted by lawyers." Caldwell v. Argosy Univ., 797 F. Supp. 2d 25, 27 (D.D.C. 2011) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)). "Even pro se litigants, however, must comply with the Federal Rules of Civil Procedure." Id. Rule 8(a) requires that a complaint contain a short and plain statement showing that the pleader is entitled to relief. The purpose of this minimum standard is to give fair notice to the defendants of the claim being asserted, sufficient to prepare a responsive answer, to prepare an adequate defense, and to determine whether the doctrine of res judicata applies. See, e.g., T.M. v. District of Columbia, 961 F. Supp. 2d 169, 173–74 (D.D.C. 2013); Brown v. Califano, 75 F.R.D. 497, 498 (D.D.C. 1977). Claims that do not meet the requirements of Rule 8 are dismissed for failure to state a claim upon which relief can be granted under Rule 12(b)(6).

Here, Palmieri's claims that the government "refused to officially name and identify [its] witness" and that the government "hampered [his] access to witnesses via the execution of non-disclosure agreements," fail to comply with Rule 8. The only adverse witness Palmieri references in his complaint and in his briefings is the reserve military member, but it is clear

from the record that Palmieri knew her identity, <u>see</u> Nov. 27, 2012 DOHA Opinion at 2 (noting that, in the administrative hearing, Palmieri "stated that he knew the identity of the reserve military member"), and that he was given an opportunity to access her as a witness, <u>see</u> <u>id.</u> (stating that Palmieri was told by the Administrative Judge that "he could request the reserve military member as a witness" and that the Administrative Judge "would ask Department Counsel to locate her and seek her testimony," but that Palmieri responded that he "did not desire to call the witness"). Palmieri does not contest these facts. He fails to show, then, how he is entitled to any relief for the government's purported refusal to disclose this witness's identity or for the government's alleged "hamper[ing]" of access to this witness.

To the extent that Palmieri is referring to some other witness, he fails to provide any information that would support his claim or that would give the government "fair notice . . . of the claim being asserted" to defend against his claim. Fed. R. Civ. P. 8; <u>see also</u> <u>Ashcroft</u>, 556 U.S. at 678 (explaining that Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"); <u>Twombly</u>, 550 U.S. at 555 (explaining that a complaint tendering "naked assertions" devoid of "further factual enhancement" does not suffice under Rule 8). Accordingly, these claims will be dismissed.

## B. Due Process Claim That Palmieri Was Denied The Opportunity To Cross-Examine A Witness

Palmieri claims that the DOHA Administrative Judge's acceptance of the NCIS Letter as evidence in Palmieri's administrative hearing, without mandating the cross-examination of the reserve military member, violated his due process rights. "'The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'liberty' or 'property.' Only after finding the deprivation of a protected interest do we look to see if the [government's] procedures comport with due process.'" <u>Gen. Elec. Co. v. Jackson</u>, 610 F.3d 110,

117 (D.C. Cir. 2010) (quoting <u>Amer. Mfrs. Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 59 (1999)). Here, Palmieri has not alleged a basis for the Court to find any deprivation of liberty or property in the administrative hearing process that resulted in the revocation of his security clearance.

Palmieri does not have a liberty or property interest in his security clearance, so his security clearance cannot serve as a predicate liberty or property interest.[7] <u>Dorfmont v. Brown</u>, 913 F.2d 1399, 1404 (9th Cir. 1990) ("[A] claim for denial of due process stemming from the revocation of a security clearance is not a colorable constitutional claim."); <u>accord</u> <u>El-Ganayni v. U.S. Dep't of Energy</u>, 591 F.3d 176, 183 n.4 (3d Cir. 2010); <u>Robinson v. Dep't of Homeland Security</u>, 498 F.3d 1361, 1364 (Fed. Cir. 2007); <u>Jamil v. Sec'y of Dep't of Defense</u>, 910 F.2d 1302, 1209 (4th Cir. 1990); <u>cf.</u> <u>Egan</u>, 484 U.S. at 528 (explaining that the decision to grant a security clearance is "an affirmative act of discretion on the part of the granting official," and that "no one has a 'right' to a security clearance"). Nor does Palmieri's contention that he suffered an injury to his livelihood give rise to a protected liberty or property interest, because the right "to earn a living" does not extend to jobs requiring a security clearance. <u>Dorfmont</u>, 913 F.2d at 1403 ("If there is no protected interest in a security clearance, there is no liberty interest in employment requiring such clearance."). Accordingly, Palmieri has not sufficiently alleged the

---

[7] Palmieri also claims that he was "publicly branded . . . disloyal" by the loss of his security clearance, which, he alleges, constitutes the loss of a protected liberty or property interest. Pl.'s Opp'n at 21. This claim was not included in his complaint, so the Court need not address it. <u>Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.</u>, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) ("'It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.'") (quoting <u>Coleman v. Pension Benefit Guar. Corp.</u>, 94 F. Supp. 2d 18, 24 n.8 (D.D.C. 2000))). Nevertheless, the Court notes that "[a security] clearance does not equate with passing judgment upon an individual's character. Instead, it is only an attempt to predict his possible future behavior and to assess whether, under compulsion of circumstances or for other reasons, he might compromise sensitive information." <u>Egan</u>, 484 U.S. at 528. In line with <u>Egan</u>'s analysis, Executive Order 10865—regarding the security clearance of applicants—specifically states that "[a]ny determination under this order adverse to an applicant shall be a determination in terms of the national interest and shall in no sense be a determination as to the loyalty of the applicant concerned." <u>Id.</u> § 7. Accordingly, Palmieri's loss of a security clearance does not constitute a public branding of disloyalty that can form the basis for a protected liberty or property interest violation. <u>See, e.g.</u>, <u>Hill v. Dep't of Air Force</u>, 844 F.2d 1407, 1412 (10th Cir. 1988) (holding that, under <u>Egan</u>, the government's dissemination of information regarding plaintiff's security clearance suspension, which plaintiff argued "impugned [his] standing and reputation," did not violate a liberty or property interest).

deprivation of a liberty or property interest to form the basis of a due process claim. Therefore, this claim will be dismissed.

### C. APA Claim That Palmieri Was Denied The Opportunity To Cross-Examine A Witness

Palmieri also asserts that the government violated the APA by "arbitrarily and capriciously ignoring the requirements set forth in both Executive Order 10865 and DOD Directive 5220.6" when it purportedly denied his right to cross-examine the reserve military member.[8] Am. Compl. at 111. Specifically, Palmieri argues that, pursuant to Section 3(6) of Executive Order 10865 and the corresponding Section 4.3.3 of Directive 5220.6, he has a right to cross-examine witnesses making adverse statements against him in an administrative hearing.

Under the APA, a court must set aside agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This standard of review is "[h]ighly deferential" and "presumes the validity of agency action." AT&T Corp. v. FCC, 220 F.3d 607, 616 (D.C. Cir. 2000). Here, this Court's review is limited to consideration of whether DOHA complied with its own regulations during the security clearance administrative hearing. Executive Order 10865, 25 Fed. Reg. 1583 (1960), provides that a security clearance may not be finally denied or revoked unless the applicant has "[a]n opportunity to cross-examine persons either orally or through written interrogatories . . . ." Id. § 3(6). This Executive Order was implemented by Department of Defense Directive 5220.6, which establishes that, in security clearance proceedings, the applicant shall have "[n]otice of the right to a hearing and the opportunity to cross-examine persons providing information adverse to

---

[8] Palmieri claims in his opposition to defendants' motion to dismiss that he has, "in actuality," complained that defendants "have also not followed the requirements" of "PDD/NSC-12" and Executive Order 12333. Pl.'s Opp'n at 24. These claims were not included in his amended complaint. Moreover, Palmieri fails to point to any particular section of these regulations that the government has allegedly violated. Such claims fail because they "tender[] naked assertion[s] devoid of further factual enhancement." Ashcroft, 556 U.S. at 678. And to the extent these claims challenge the security decisions made by the government, they are barred by Egan.

applicant." Id. § 4.3.3.  The Directive's enclosure elaborates that "[a] written or oral statement adverse to the applicant on a controverted issue may be received and considered by the Administrative Judge without affording an opportunity to cross-examine the person making the statement orally, or in writing, when justified by the circumstances," which include: where the head of the Department or agency supplying the statement certifies that the person who furnished it is a confidential informant; where the statement has been determined to be reliable, the person who made the statement is unavailable to testify for specific reasons, and the Administrative Judge's failure to consider it would be substantially harmful to national security; and where there is "[s]ome other cause determined by the Secretary of Defense, or when appropriate by the Department or Agency head, to be good and sufficient." Id. ¶¶ E3.1.22–E3.1.22.2.2.

Also relevant to the issue of cross examination is ¶ E3.1.20, which provides:

> Official records or evidence compiled or created in the regular course of business, other than DoD personnel background reports of investigation (ROI), may be received and considered by the Administrative Judge without authenticating witnesses, provided that such information has been furnished by an investigative agency pursuant to its responsibilities in connection with assisting the Secretary of Defense, or the Department or Agency head concerned, to safeguard classified information within industry under E.O. 10865 (enclosure 1). An ROI may be received with an authenticating witness provided it is otherwise admissible under the Federal Rules of Evidence (28 U.S.C. [§] 101 et seq. (reference (d)).

Id.  Directive paragraphs E3.1.22 and E3.1.20 are consistent with Executive Order 10865 Sections 4(a) and 5(a), respectively.

Palmieri complains that the government violated the Executive Order and DOD Directive when the NCIS Letter, which discussed a reserve military member's report regarding Palmieri, was introduced as evidence at Palmieri's security clearance administrative hearing and Palmieri was not given an opportunity to cross-examine the reserve military member.  DOHA's decision to admit the document containing the reserve military member's report without cross-

examination, however, is in accordance with its rules and regulations. As the DOHA Appeal Board noted in its decision affirming the revocation of plaintiff's security clearance, it has "consistently held that ¶ E3.1.22 does not provide a right of cross examination concerning out-of-hearing statements that are admissible under other provisions of the Directive." Mar. 14, 2013 DOHA Opinion at 4–5. And the NCIS Letter was found by the Administrative Judge to be admissible under a separate provision in the Directive concerning official records. Id. (citing DOD Directive 5225.6 ¶ E3.1.20).

The Appeal Board affirmed the Administrative Judge's decision, explaining that:

> To interpret ¶ E3.1.22 as Applicant argues would impose a right of cross-examination as a condition of admitting otherwise admissible hearsay evidence on controverted matters. That would render other paragraphs of the Directive meaningless. . . . Accordingly, we have consistently held that ¶ E3.1.22 does not provide a right of cross examination concerning out-of-hearing statements that are admissible under other provisions of the Directive. One such provision is Directive ¶ E3.1.19 . . . with the FRE's panoply of hearsay exceptions. Another is Directive ¶ E3.1.20, which states: "[o]fficial records or evidence compiled or created in the regular course of business, other than DoD personnel background reports of investigation (ROI), may be received and considered by the Administrative Judge without authenticating witnesses, provided that such information has been furnished by an investigative agency pursuant to its responsibilities in connection with assisting the Secretary of Defense, or the Department or Agency head concerned, to safeguard classified information . . . ." We have cited this paragraph in admitting a variety of documents, including police reports, criminal investigation reports by the military services, Defense Investigative Service facility inspection reports, and Clearance Decision Statements. In the case under consideration here, the document in question possesses all the indicia of having been compiled in the regular course of official NCIS operations. Prepared on NCIS letterhead station[e]ry, it relates matters that fall within the purview of a DoD criminal investigating agency and which are appropriate for reporting to the DoD agency charged with overseeing contractor security matters. It does not appear to have been generated merely in anticipation of a DOHA hearing. There is nothing in the record to suggest that this document exceeded the scope of NCIS authority, and Federal officials are entitled to a presumption of good faith in the conduct of their duties. Accordingly, this document is an official record within the meaning of the Directive.
> Moreover, it is not a report of a background investigation but, rather, of a criminal investigation into possible counter-intelligence activity by Applicant. Accordingly, it was legitimate for the Judge to admit it without an authenticating

> witness. In light of the record as whole, the Judge's decision to admit this
> document was not arbitrary, capricious, or contrary to law. To the extent that
> Applicant raised a due process concern in making his argument on this issue, we
> resolve it adversely to him.

Mar. 14, 2013 DOHA Opinion at 4–5. Hence, the Appeal Board exercised its responsibility to

interpret and apply the Directive, and found that, viewing Paragraph E3.1.22 in the context of the

entire Directive, the Administrative Judge properly admitted the evidence in question. Palmieri

fails to show how DOHA's careful application of the Directive was "arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Indeed, the

DOHA Appeal Board thoughtfully reviewed and applied the governing authorities. Because

DOHA complied with its own regulations during the security clearance administrative hearing,

Palmieri's APA claims fails.

## V. ILLEGAL SEARCH CLAIMS UNDER THE FOURTH AMENDMENT, THE FIRST AMENDMENT, AND FISA (COUNTS 4, 6, 11, AND 14).

Palmieri makes several claims that the government performed illegal searches during its

investigation of him. Specifically, he alleges that the government accessed his Facebook account

in violation of his First and Fourth Amendment rights; conducted physical and vehicular

surveillance of him in Bahrain in violation of FISA; and searched his office and his work emails

and internet activity in violation of FISA. These counts will be dismissed for failure to state

claims upon which relief can be granted.

### A. Facebook Access Claim (Count 4)

Palmieri alleges that defendants accessed information such as photographs, lists of

"friends," and various communications on Palmieri's Facebook account. Am. Compl. at 54–55.

He does not allege that the government hacked into his account or subpoenaed Facebook for his

account information. Rather, it appears that one of the individual defendants, to whom Palmieri

had given access to his Facebook page, used that access to obtain the information that Palmieri complains was then shared with the government. See id. This alleged action, however, does not constitute a violation of Palmieri's constitutional rights.

The Fourth Amendment guarantees that all people shall be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A person has a reasonable expectation of privacy when he has a subjective expectation of privacy that society recognizes as reasonable. See, e.g., California v. Greenwood, 486 U.S. 35, 39 (1988); Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J. concurring). A person generally has a reasonable expectation of privacy in the contents of his computer. See, e.g., United States v. Heckenkemp, 482 F.3d 1142, 1146 (9th Cir. 2007); United States v. Buckner, 473 F.3d 551, 554 n.2 (4th Cir. 2007); United States v. Lifshitz, 369 F.3d 173, 190 (2d Cir. 2004); Guest v. Leis, 255 F.3d 325, 333 (6th Cir. 2001). This expectation may be extinguished, however, when a computer user disseminates information to the public through a website. Cf. Katz, 389 U.S. at 351 ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection."). And, similarly, "[a] person has no legitimate expectation of privacy in information he voluntarily turns over to third parties," Smith v. Maryland, 442 U.S. 735, 743–44 (1979), "even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed," United States v. Miller, 425 U.S. 435, 443 (1976). Hence, when a Facebook user allows "friends" to view his information, the Government may access that information through an individual who is a "friend" without violating the Fourth Amendment. See United States v. Meregildo, 883 F. Supp. 2d 523, 526 (S.D.N.Y. 2012) (holding that defendant's Facebook postings, to which a friend gave law enforcement access, were not the

subject of an illegal search); cf. Disner v. United States, 2013 WL 1164502, at *1 (D.C. Cir. Feb. 20, 2013) (explaining that appellants "had no reasonable expectation of privacy in records allegedly stored on a third party's computer"); United States v. Barone, 913 F.2d 46, 49 (2d Cir. 1990) (explaining that a person does not have a legitimate privacy expectation in telephone calls recorded by the Government with the consent of at least one party on the call); Roasio v. Clark Cnty. Sch. Dist., 2013 WL 3679375, at *5–6 (D. Nev. July 3, 2013) (explaining that when a person shares information with a third party—such as Twitter messages with friends—that person takes the risk that the third party will share it with the government).

Palmieri shared his Facebook information with "friends," and hence he had no privacy expectation in that information because those "'friends' were free to use the information however they wanted—including sharing it with the Government." Meregildo, 883 F. Supp. 2d at 527 (citing Guest v. Leis, 255 F.3d 325, 333 (6th Cir. 2001) (finding that an email sender, similar to a letter writer, loses their expectation of privacy in the email's contents upon delivery of the email to a third party)). Because Palmieri had no reasonable expectation of privacy in the information he made available to "friends" on his Facebook page, he cannot claim a Fourth Amendment violation. Palmieri likewise fails to make out a First Amendment claim. His bare allegation does not show how the government's legal use of his Facebook information violated his First Amendment rights.

### B.  Physical and Vehicular Surveillance Claim (Count 11)

Palmieri alleges that the United States "performed surveillance against [him] overseas, including, but not necessarily limited to, the physical and/or vehicular surveillance in the streets of Bahrain." Am. Compl. at 75.  He elaborates that, on April 26, 2010, he "was the target of vehicular surveillance in the streets of Manama, Bahrain.  Based on the techniques [that he]

observed and the fact that the person following [him] was Hispanic, not Middle Eastern in appearance, [he] believed that this surveillance was American or otherwise Western in origin." Id. at 19.

Palmieri contends that the purported "physical and vehicular" surveillance violates the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. § 1881c.  FISA, however, applies only to surveillance "under circumstances in which a person has a reasonable expectation of privacy and a warrant would be required for law enforcement purposes."  50 U.S.C § 1801(f). As reflected in United States v. Knotts, 460 U.S. 276 (1983), no such reasonable expectation applies to a person walking or driving on public roads.  Id. at 281 (explaining that a person traveling "on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another").  In support of his claim, Palmieri references United States v. Jones, 132 S.Ct. 945 (2012), which held that the government's "installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search'" within the meaning of the Fourth Amendment because there was a trespass.  Id. at 949. Palmieri does not allege, however, that the government used a GPS device attached to his vehicle to conduct the alleged surveillance of him or otherwise committed a trespass.

Palmieri had no reasonable expectation of privacy while walking or driving on public roads, so any surveillance of him in such circumstances is not actionable under FISA, even assuming his standing to raise it.[9]  This claim will therefore be dismissed.

---

[9] Palmieri's standing to raise a claim under FISA is speculative.  He has not alleged a search or seizure made pursuant to authority under FISA that would constitute an actionable injury under FISA.  Instead, as alleged, his claim amounts to an allegation of "tailing" in a public space.  Generally, standing is difficult to establish in challenges to alleged surveillance under FISA.  See, e.g., Clapper v. Amnesty Int'l USA, 133 S.Ct. 1138, 1146–54 (2013).

### C.  Office And Work Computer Search Claims (Counts 6 and 14)

Palmieri also claims that, in the course of the security clearance investigation, the government illegally searched his office and accessed electronic information on his work computer without a search warrant.  When a government employer conducts a search pursuant to the investigation of work-related misconduct, however, a warrant is not required if the search is reasonable in its inception and its scope.  O'Connor v. Ortega, 480 U.S. 709, 724–25 (1987); see also id. at 725 ("Balanced against the substantial government interests in the efficient and proper operation of the workplace are the privacy interests of government employees in their place of work which, while not insubstantial, are far less than those found at home or in some other contexts. . . . Government offices are provided to employees for the sole purpose of facilitating the work of an agency.  The employee may avoid exposing personal belongings at work by simply leaving them at home.").  A search ordinarily will be reasonable at its inception "when there are reasonable grounds for suspecting that the search will turn up evidence that the employee is guilty of work-related misconduct."  Id. at 726.  "The search will be permissible in its scope when 'the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of . . . the nature of the [misconduct].'"  Id. (quoting New Jersey v. T.L.O., 469 U.S. 325, 342 (1985)).  And an employer has an interest in fully investigating a plaintiff's possible misconduct, even if the misconduct is criminal.  See, e.g., United States v. Simons, 206 F.3d 392, 400 (4th Cir. 2000) (holding that remote, warrantless searches of defendant's office computer by his public employer, and employer's entry into defendant's office to retrieve his hard drive to investigate possible work misconduct, which was also criminal conduct, did not violate defendant's rights).

Accepting Palmieri's allegations as true, the searches of Palmieri's office and of his activity on his work computer were performed because his employer suspected that he was involved in misconduct related to his security clearance. The searches of his office and his workplace computer activity appear reasonably related to the objective of discovering whether Palmieri was, indeed, engaged in misconduct related to his security clearance. As alleged, then, these searches fall within the ambit of the O'Connor exception to the warrant requirement, i.e., the searches were carried out for the purpose of obtaining "evidence of suspected work-related employee misfeasance."[10] 480 U.S. at 723–25. Accordingly, these claims will be dismissed.

## VI.    PRIVACY ACT CLAIMS (COUNTS 10, 17, & 18)

Palmieri alleges that the government violated several sections of the Privacy Act, 5 U.S.C. § 552a, when it shared and maintained records about him. None of his claims are legally sufficient, however.

Counts 10 and 17 allege that the government disclosed protected information concerning the investigation of Palmieri to "individuals who were not authorized to receive it." Am. Compl. at 94; see also id. at 72. Palmieri asserts that the government disclosed the existence of an ongoing security clearance investigation of him to "various employees" of the Navy, Palmieri's supervisor, and Palmieri's "associates." Id. at 72, 94.

"The [Privacy] Act gives agencies detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by failures on the Government's part to comply with the requirements." Doe v. Chao, 540 U.S. 614, 618 (2004). Section 552a(b) generally prohibits government agencies from disclosing confidential records without the

---

[10] Moreover, if this claim were to be decided on summary judgment, the Court notes that Palmieri's exhibits to his briefing indicate that the government computer system warned users—like Palmieri—that the computer and network were subject to search by the government. This warning undercuts any reasonable expectation of privacy that Palmieri arguably may have had in the computer system.

consent of the individual.  See Bigelow v. Dep't of Defense, 217 F.3d 875, 876 (D.C. Cir. 2000).

A "record" is "any item, collection, or grouping of information about an individual that is

maintained by an agency . . . ."  U.S.C. § 552a(a)(4).  An individual may file a lawsuit against an

agency for injunctive relief and monetary damages if an improper disclosure was willful or

intentional and caused injury that adversely affected the individual.  Doe v. U.S. Dep't of Justice,

660 F. Supp. 2d 31, 44–45 (D.D.C. 2009); see also 5 U.S.C. § 552a(g)(1).

Palmieri's Privacy Act claims fail because he has not asserted actual damages from an

adverse effect caused by the alleged violations.  He argues that the sharing of information

pertaining to the security investigation of him "resulted in [his] removal from employment in

Bahrain and the consequential loss of livelihood."  Am. Compl. at 72.  But information regarding

his status as a person under investigation is not what caused his loss of employment.  As Palmieri

admits, the loss of his security clearance was the cause of his loss of employment.  See id. at 31.

The only other damages Palmieri asserts are his speculative claims of emotional distress

allegedly caused by others talking about his status as a person under investigation.  Id. at 73, 95.

Although gossip may cause an adverse effect, it does not constitute actual damages.  See Doe,

660 F. Supp. 2d at 49–50 (explaining that emotional anguish alone is insufficient under the

Privacy Act).  Palmieri's Privacy Act claims therefore cannot survive because of a lack of actual

damages.

Moreover, even if Palmieri could show actual damages, his claims would still be

deficient.  An agency may legally disclose protected records without consent if one of twelve

statutory exemptions applies.  See id. § 552a(b)(1–12) (listing the twelve exemptions).  The

alleged disclosures at issue fall within the "need-to-know" exemption, which permits disclosure

"to those officers and employees of the agency which maintains the record who have a need for

the record in the performance of their duties."  5 U.S.C. § 552a(b)(1).  When performing a section 552a(b)(1) inquiry, a court asks "whether the official examined the record in connection with the performance of duties assigned to him and whether he had to do so in order to perform those duties properly."  Bigelow, 217 F.3d at 877 (describing this inquiry as the "point" of the exemption).

Palmieri complains that his former government-contractor co-workers and Navy employees—at least some (if not all) of whom have industrial security clearances and access to secure information—were told of the revocation of his security clearance and the ongoing investigation of him.  The government responds that these individuals were given this information because they "had a need to know this information in order to ensure that Plaintiff was not inadvertently permitted to access [information which] was no longer available to him."  Defs.' Reply at 19.  The government argues that "[t]he need to safeguard the government's national security interests clearly warranted notifying others who had worked with Plaintiff of the need to avoid the possibility that he would employ them to gain access to government offices and classified information."  Id. at 19–20.

It seems clear that any disclosure of Palmieri's security status to a limited group of other employees was done in the interest of national security.  The only individuals who were allegedly told about the revocation and investigation were individuals who may have otherwise given Palmieri access to secure documents, buildings, or information.  They were informed of Palmieri's status so that they could continue to do their jobs, part of which involved protecting classified information from unauthorized disclosure.

Count 18 alleges another Privacy Act claim: that government officials "disseminated Privacy Act protected information to other Government agencies" in violation of 5 U.S.C. §

552a(e)(5), which requires "accuracy, relevance, timeliness, and completeness" in the maintenance of records; in violation of 5 U.S.C. § 552a(e)(6), which requires "reasonable effort to assure that such records are accurate, complete, timely, and relevant for agency purposes"; and in violation of 5 U.S.C. § 552a(e)(7), which prohibits the disclosure of records "describing how any individual exercises rights guaranteed by the First Amendment." Palmieri claims that the "disclosures of inaccurate or incomplete records . . . were used to make adverse determinations against [him]." Am. Compl. at 98.

To the extent Palmieri challenges the government's national security decisions based on its creation of security records about him, such claims are barred by Egan. To the extent he alleges that information in those records was inaccurate, irrelevant, untimely, or incomplete, he fails to plead his claims with specificity. He does not allege how his records were deficient or what misinformation is allegedly included in his record, nor does he allege what the record contained that allegedly concerned his exercise of First Amendment rights. The Rule 8 standard is not satisfied by "naked assertion[s] devoid of further factual enhancement." Ashcroft, 556 U.S. at 678. Here, Palmieri fails to state a cognizable claim because he has failed to identify any specific facts contained in agency records that he believes to be inaccurate or inappropriate.[11] Accordingly, his Privacy Act claims will be dismissed.

## VII. FOIA/PRIVACY ACT CLAIMS (COUNTS 23–27, 29)

Palmieri's six remaining claims are all brought under FOIA and the Privacy Act for denial of records by six separate agencies: ONI, NCIS, DDS, OPM, DMDC, and DOS. The government has moved to dismiss these claims, arguing that doing so will benefit Palmieri: "Plaintiff will still have time to bring [these claims] in separate actions; and he will be guided by

---

[11] To the extent Palmieri is referring to the report from the military reserve member at issue in his other claims, he has alleged no facts showing that the report was inaccurate.

the declarations that accompany this motion such that he may choose wisely what claims to pursue." Defs.' Mot. at 37. The government provides no legal basis for dismissing these claims,[12] however, and so the Court will deny this request.

The government also proposes severing these claims. It is this Court's view that severing these six claims into six different actions, or into one separate FOIA-only action, would actually be inefficient. The Court defers to the policy underlying Federal Rule of Civil Procedure 20, which is to promote trial convenience, prevent multiple lawsuits, and expedite the final determination of disputes. With all other claims now dismissed, the most efficient course is to have this action now proceed on these remaining FOIA/Privacy Act claims. For this reason, the Court will deny the government's motion to sever as well.

Lastly, the government moves the Court to order Palmieri to "provide a more definite statement (now . . . informed by the several declarations filed with the Court) and specify exactly what issues and/or withholdings Plaintiff may wish to further challenge." Defs.' Mot. at 37–38; see also Defs.' Notice of Filing [ECF No. 27]. Palmieri responds by reiterating some of his claims, and stating broadly that various entities are "refus[ing] to release to [him] records in full." Pl.'s Opp'n at 45; see also id. at 46. In order to permit the best opportunity for Palmieri to receive full and fair consideration of his FOIA/Privacy Act claims, the Court will order him to specify exactly which withholdings he wishes to further challenge, in light of the declarations the government has recently provided.

## VIII.  PALMIERI'S MOTION FOR THE PRESERVATION OF EVIDENCE

After the parties fully briefed the government's and Palmieri's motions, Palmieri filed a motion for preservation of evidence. He requests that the Court order the government "to

---

[12] The government discusses misjoinder immediately prior to proposing that the Court dismiss these FOIA/Privacy Act claims, but "misjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21.

preserve all documents and information, including electronic records, concerning any matter that may be relevant to a claim or defense arising from litigation or potential litigation involving Palmieri, or that may lead to the discovery of admissible evidence." Pl.'s Mot. for Preservation of Evidence [ECF No. 48] at 1.

Federal Rule of Civil Procedure 26 provides that parties have a duty to disclose relevant documents and records, which implicitly requires a duty to preserve relevant documents and records. The government, like any party to a federal civil litigation, is expected to comply with this rule. Without cause to believe otherwise, the Court assumes that the government is fulfilling its obligations under the federal rules. For this reason, Palmieri's motion will be denied.

## CONCLUSION

For the reasons set forth above, the Court will grant in part and deny in part the United States' motion to dismiss, to sever, for a more definite statement, or for summary judgment; will deny Palmieri's motion for partial summary judgment; and will deny Palmieri's motion for the preservation of evidence. A separate Order has been issued on this date.

_____/s/_____
JOHN D. BATES
United States District Judge

Dated: November 3, 2014