## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MATTHEW RICHARD PALMIERI,

      Plaintiff,

          v.

UNITED STATES OF AMERICA, et al.,

      Defendants.

Civil Action No. 12-1403 (JDB)

## MEMORANDUM OPINION

Plaintiff Matthew Richard Palmieri, a former contractor for the United States, had his security clearance revoked following a government investigation into his activities abroad. In response, Palmieri brought a 30-count civil action against various government agencies and officials, alleging constitutional and statutory violations arising out of the investigation, the subsequent administrative hearing, the loss of his security clearance, and the government's responses to his document requests. Most of those counts were dismissed in a prior decision of this Court. See Palmieri v. United States, 72 F. Supp. 3d 191 (D.D.C. 2014). Others have been dismissed by stipulation of the parties. Now the government has moved for summary judgment on Palmieri's five remaining counts, which were brought under the Freedom of Information and Privacy Acts and seek records related to the government's investigation of Palmieri. The Court will grant the government's motion in part.

## BACKGROUND

Palmieri's FOIA and Privacy Act requests are based upon his account of the government's investigation of him. According to Palmieri, the investigation began in June 2009, when Deborah Stickney of the Office of Naval Intelligence (ONI) "created an agency record" regarding certain

of his activities.  See Am. Compl. [ECF No. 14] at 14–15.  After sharing the records with her Special Security Officer and her supervisor, Stickney allegedly obtained permission from the Director of ONI to transfer the records to the Naval Criminal Investigative Service (NCIS) at a later in-person meeting.  See Pl.'s Opp'n [ECF No. 66] at 3–4.  From there, Palmieri contends, the investigation began in earnest.  NCIS obtained Palmieri's emails, phone records, and hard drives; surveilled him in the streets of Manama, Bahrain; searched his office; "interrogated [him] inside the NCIS Middle East Field Office in Bahrain"; and subjected him to a polygraph test.  See Am. Compl. at 17–26.  It also allegedly enlisted the help of other agencies.  After ONI had provided NCIS with a Facebook photograph of Palmieri and some friends at a restaurant, NCIS asked "U.S. Embassy staff," perhaps including employees of the State Department (DOS), to help identify Palmieri's associates.  See id. at 15–16.  NCIS also requested and obtained Office of Personnel Management (OPM) records regarding Palmieri's security clearance.  Id. at 17–18.  In July 2011, after a two-year investigation,  NCIS referred Palmieri's case to the Defense Security Service (DSS) for appropriate action.  DSS decided to suspend Palmieri's clearance.  See id. at 28–31.

Preparing a challenge to that suspension, Palmieri began sending FOIA and Privacy Act requests to the various agencies "involved with [his] situation," id. at 31–32, including the five agencies discussed above.  Much has transpired since then.  Palmieri filed suit in this Court, but his case was stayed pending completion of administrative proceedings that ultimately upheld the suspension of his clearance.  See Am. Compl. at 33–37.  Once the stay had been lifted, Palmieri filed a 30-count amended complaint against various agencies and government officials.  Many counts alleged constitutional and statutory violations arising out of the government's investigation and suspension decision.  Others focused on the agency defendants' alleged denial of records under FOIA and the Privacy Act.  Twenty-five of the counts in Palmieri's amended complaint have now

been dismissed—most on the government's motion, see Palmieri v. United States, 72 F. Supp. 3d 191 (D.D.C. 2014), but some by Palmieri's consent.[1]  The five remaining counts allege violations of FOIA and the Privacy Act by defendants ONI, DOS, DSS, NCIS, and OPM.[2]  The government has now moved for summary judgment on all remaining counts.

## LEGAL STANDARD

"FOIA cases typically and appropriately are decided on motions for summary judgment." Defs. of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).  The Court grants summary judgment if the movant shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  In a FOIA action, the agency "is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from [FOIA's] inspection requirements.'"  Students Against Genocide v. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978)).  Summary judgment may be based solely on information provided in an agency's supporting affidavits or declarations if they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith."  Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).

---

[1] Palmieri has released his FOIA and Privacy Act claims against the Financial Crimes Enforcement Network (FinCEN) and the CIA.  See Joint Stip. of Partial Dismissal [ECF No. 38].  While briefing the pending motion, he also released his FOIA and Privacy Act claims against the Defense Manpower Data Center (DMDC).  See Pl.'s Opp'n [ECF No. 66] at 8.

[2] Palmieri had previously alleged that the agency defendants' document denials also violated the Administrative Procedure Act.  He has now abandoned that theory.  See Joint Stip. of Partial Dismissal.

"The adequacy of an agency's search is measured by a standard of reasonableness and is dependent upon the circumstances of the case." Weisberg v. U.S. Dep't of Justice, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (internal quotation marks and citation omitted).   An agency must "demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." Valencia–Lucena v. U.S. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (internal quotation marks omitted).   "A reasonably detailed affidavit, setting forth the search terms and the type of search performed[,] is necessary to afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant summary judgment." DeBrew v. Atwood, 792 F.3d 118, 122 (D.C. Cir. 2015) (internal quotation marks and alteration omitted).

"[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry" it out.   Iturralde v. Comptroller of Currency, 315 F.3d 311, 315 (D.C. Cir. 2003).   A well-designed search may be adequate, therefore, even if it fails to locate every potentially responsive document.   Stated another way, the "failure of an agency to turn up one specific document in its search does not alone render a search inadequate." Id.; see Ancient Coin Collectors Guild v. U.S. Dep't of State, 641 F.3d 504, 514 (D.C. Cir. 2011) (explaining that a search is not deficient merely because a "reasonable observer would find [the lack of] result[s] unexpected"); Espino v. U.S. Dep't of Justice, 869 F. Supp. 2d 25, 28 (D.D.C. 2012) ("[A] search is not inadequate simply because it failed to turn up a document that [plaintiff] believes must exist, or even a document he knows to exist.").

The disclosure provision of the Privacy Act provides an independent basis for Palmieri's record requests.   "Unlike FOIA, the Privacy Act's primary purpose is not disclosure." Blazy v. Tenet, 194 F.3d 90, 96 (D.C. Cir. 1999).   Rather, the Privacy Act aims to "safeguard[] the public

from unwarranted collection, maintenance, use and dissemination of personal information contained in agency records. It does so by allowing an individual to participate in ensuring that his records are accurate and properly used, and by imposing responsibilities on federal agencies to maintain their records accurately." Bartel v. FAA, 725 F.2d 1403, 1407 (D.C. Cir. 1984) (footnote omitted). To facilitate an individual's participation in the recordkeeping process, the Act includes a disclosure requirement. Agencies maintaining "systems of records" must allow an individual to access those records pertaining to him upon his request. Henke v. U.S. Dep't of Commerce, 83 F.3d 1453, 1456 (D.C. Cir. 1996) (citing 5 U.S.C. § 552a(d)(1)); see also 5 U.S.C. § 552a(a)(5) (defining "system of records").

But like FOIA, the Privacy Act allows agencies to exempt certain records from disclosure. See 5 U.S.C. § 552a(j),(k). "[W]hen a request for documents is [properly] made under both FOIA and the Privacy Act, the responding agency must demonstrate that the documents fall within some exemption under each Act." Boyd v. Exec. Office for U.S. Attorneys, 87 F. Supp. 3d 58, 86–87 (D.D.C. 2015) (internal quotation marks omitted). An agency may not rely on a FOIA exemption to withhold from an individual any record which is otherwise accessible to him under the Privacy Act. 5 U.S.C. § 552a(t)(1)).

## DISCUSSION

The issues currently before the Court are narrower than the sprawling record in this case might suggest. In connection with the government's prior motion to dismiss, most of the agency defendants provided declarations describing their searches and the bases for their claimed FOIA and Privacy Act exemptions. Palmieri was instructed to draw on these declarations and identify "exactly" any remaining issues. See Palmieri, 72 F. Supp. 3d at 214–15. Barely engaging with those agency declarations, Palmieri's "more definite statement" is less exact than the Court had

hoped it would be. Nonetheless, his filing does mount challenges to the searches conducted by ONI, DOS, DSS, and OPM, and to the exemption claims by OPM and NCIS. Largely unsupported by citations to evidence in the record or to relevant case law, most of those challenges are unsuccessful. Summary judgment will be granted as to the searches by DOS, DSS, and OPM and as to the exemption claims by NCIS. But as to ONI's search and OPM's exemption claims, Palmieri has said enough to survive summary judgment for the time being.

### A. Office of Naval Intelligence (ONI)

Palmieri's request sought from ONI "all records maintained about [him.]" Am. Compl. at 122. Specifically, Palmieri sought any records indexed to his name, those concerning the overseas surveillance against him, any records exchanged between ONI and NCIS, and a "record created by the ONI employee Deborah Marie Stickney which related to my First Amendment protected activities"—presumably the Facebook photo of Palmieri and his associates. Id.; see also Pl.'s More Definite Stmt. [ECF No. 54] at 1–2 (requesting "all records of Stickney's summer 2009 'post-travel debriefing'" with her Special Security Officer). ONI conducted a search that returned no responsive documents. See Watson Decl. [ECF No. 27-14]. Palmieri thinks this result highly implausible. Documents recovered from other agencies, Palmieri contends, conclusively show that Stickney created records regarding his activities, shared them with her Special Security Officer and other management, and then turned them over to the NCIS at an in-person meeting. See Pl.'s Opp'n at 3–4. In Palmieri's view, any search that failed to locate these responsive documents must be viewed with skepticism.

ONI is correct that a search is not deficient merely because a "reasonable observer would find [the lack of] result[s] unexpected." Ancient Coin Collectors Guild, 641 F.3d at 514. But here, there are numerous additional reasons to doubt the thoroughness of ONI's search. According to

its declaration, ONI searched the two components—the Special Security Office and Maritime Counter Terrorism Branch[3]—most likely to contain responsive documents. See Watson Decl. ¶ 10. But that is where the explanation ends. ONI's declaration fails to describe those components, their functions, the records they normally maintain, why they were selected for the search, or why others were excluded. Without such information, the Court cannot be sure that ONI's search methodology was a reasonable one. ONI similarly fails to "set[] forth the search terms" it employed. See DeBrew, 792 F.3d at 122. This pervasive lack of detail is especially troubling when considered in the context of ONI's full declaration, which conveys the agency's tendency to construe Palmieri's very broad record requests as narrowly as possible. See Watson Decl. ¶ 9 (no search conducted as to two subsets of records specified in Palmieri's initial request); id. ¶ 13 (no search conducted in response to Palmieri's amended record request); id. ¶ 15 (no search conducted in response to Palmieri's appeal). Considering these shortcomings collectively, the Court thinks ONI has yet to "demonstrate beyond material doubt" that its search was reasonably calculated to locate those documents responsive to Palmieri's request. Valencia–Lucena, 180 F.3d at 325. As to ONI, therefore, the government's motion for summary judgment must be denied. In the coming months, ONI must conduct a new search, reasonably calculated to locate "all" records maintained about Palmieri, and provide a new declaration that clearly explains its methodology.

## B. Department of State (DOS)

DOS, on the other hand, is entitled to summary judgment. Palmieri requested from DOS all records pertaining to him, including those indexed to his name, those related to overseas

---

[3] ONI's declaration is not clear as to exactly which components were searched. The Court's best reading of the declaration is that the agency's search extended to the Special Security Office and Maritime Counter Terrorism Branch. But the declaration also mentions, without much explanation, the Nimitz Operational Intelligence Center. Being almost completely in the dark regarding what these various components do, the Court finds it difficult to resolve these ambiguities.

surveillance against him, and those passed between DOS and NCIS. See Ex. 1 to Walter Decl. [ECF No. 27-16]. DOS's search located six responsive documents concerning Palmieri's passport. Two were released to Palmieri in full; four were released in part. Walter Decl. [ECF No. 27-15] ¶ 42. Palmieri does not appear to challenge these redactions. He is once again dismayed, however, that DOS's search did not turn up certain records, which he thinks for various reasons must exist.

Unlike ONI, DOS has provided a declaration that describes in great detail a search reasonably calculated to locate documents responsive to Palmieri's request. See Walter Decl. ¶¶ 13–26 (describing the locations searched); id. ¶¶ 17, 19, 22, 24–25 (describing the various search terms employed). Specifically, that declaration details the agency's search of the U.S. Embassy in Manama, which extended to "paper and electronic records, including e-mail messages and the Consolidated Consular Database." Id. ¶ 24. Palmieri thinks responsive records were likely maintained by Lance Bailey, a Regional Security Officer at the U.S. Embassy in Manama. Pl.'s More Definite Stmt. at 6. But the Regional Security Officers at the Manama embassy searched "their paper files, e-mails, and shared drives" to no avail. Walter Decl. ¶ 19. And, as represented in the government's reply, Lance Bailey was personally involved in those efforts. Gov't's Reply [ECF No. 67] at 7–8. DOS's declaration demonstrates that its search was adequate.

Palmieri's only argument to the contrary does not undermine that conclusion. Palmieri contends that an adequate search would necessarily have uncovered Facebook photos that NCIS shared with "U.S. Embassy Personnel" and some record of the surveillance he endured in Bahrain. See Pl.'s More Definite Stmt. at 5–6. But Palmieri's argument is speculative, based largely on his assumptions that "U.S. Embassy Personnel" included DOS personnel and that DOS would have been involved in his surveillance. His argument is also unsupported by citation to the record. Without more reliable evidence, this Court has no basis on which to conclude that records are

indeed "missing" from DOS's production.   And in any event, missing records alone would not suffice to fatally undermine a search that the agency has shown to be adequate.  See Ancient Coin Collectors Guild, 641 F.3d at 514.  Palmieri's speculative and unsupported "missing" records argument thus fails to raise a material doubt about the adequacy of the search described in DOS's detailed declaration.  The government's motion for summary judgment will therefore be granted as to DOS.

### C.  Defense Security Service (DSS)

DSS is entitled to summary judgment as well.  Through multiple requests, Palmieri sought from DSS all records pertaining to him.  He believed those records should include his full investigative file, his full Joint Personnel Adjudication System (JPAS) files, his full adjudicative history, the full text and details of any incident reports filed against him, records relating to his overseas surveillance,  and a "copy of a classified log file #11105-11 which was created by DSS." See Am. Compl. at 130–31; see also Ex. C to Blake Decl. [ECF No. 31-3]; Ex. F to Blake Decl. [ECF No. 27-8].  DSS responded with several document productions totaling 54 pages, some of which have been partially redacted.  See Blake Decl. [ECF No. 27-2] ¶ 5.  Palmieri does not appear to challenge DSS's exemption claims.[4]  See Pl.'s Opp'n at 6–7.  Unsatisfied with the search results, however, Palmieri reiterates several of his specific record requests in his more definite statement. Specifically,  he claims that DSS has denied him a January 2011 incident report filed under the "Personal Conduct"  criteria, the "classified log file," a Reimbursable Suitability Investigation

---

[4]  Palmieri's more definite statement does include a brief quotation of Privacy Act exemption (k)(2).  See Pl.'s More Definite Stmt. at 3–4.  Read in context, that passing quotation cannot be easily construed as a challenge to DSS's redactions.  But to the extent it was intended as such a challenge, Palmieri seems to have dropped the issue in his subsequent briefing.  The government's motion says that Palmieri "does not appear to challenge any of the exemptions claimed."  Gov't's Mot. for Summ. J. [ECF No. 64] at 7.  Palmieri's opposition does not suggest otherwise. See Pl.'s Opp'n at 6–7.

(RSI) performed by OPM, and "the identities of all informants" who provided information about him. See Pl.'s More Definite Stmt. 3–4.

DSS's declaration describes in detail a search reasonably calculated to locate responsive documents. See Blake Decl. ¶¶ 18–21 (describing the locations searched); id. ¶¶ 19–21 (describing the search terms used to access Palmieri's information). DSS searched several databases containing information, like incident reports, integral to security clearance adjudications. See id. ¶¶ 9, 19 (search of JPAS yielded "any and all" incident reports entered as of March 2011); id. ¶ 20 (search of the Case Adjudicative Tracking System, which, along with databases like JPAS, contains "most material required for the proper adjudication of [a] case"); id. ¶ 21 (search of the Counterintelligence Issue Database, which "contains data on persons of possible Counterintelligence interest" and, in the case of Palmieri, included an adverse information report concerning "suspicious contact with a foreign person").

Palmieri's opposition does not allege any specific deficiencies in DSS's search methodology. Instead, Palmieri again presses his "missing" records argument—this time pointing to the alleged absence of the RSI and two "incident reports." See Pl.'s Opp'n at 6–7. But that argument fails here too. The RSI is not really "missing" at all: DSS's declaration explains that DSS has limited access to OPM materials like the RSI.[5] See Blake Decl. ¶ 12. The declaration also describes an adequate search for relevant incident reports, as they are recorded in DSS's systems. That search appears to have located records in JPAS of the incident reports that Palmieri seeks, see Ex. B. to Blake Decl. [ECF No. 31-2] at 14 (JPAS record logging incident reports filed under the "Foreign Influence" and "Personal Conduct" criteria), and DSS contends that it has provided Palmieri with every record related to those reports available through the system, see

---

[5] And OPM, it seems, has located and produced it. See Simek Decl. [ECF No. 65-2] ¶ 18.

Blake Decl. ¶ 19; see also id. ¶ 14.  Palmieri again purports to have records in his possession proving that other responsive records are missing.  But once again he has failed to prove that contention with citations to the record.  And even accepting Palmieri's premise—that some responsive records remain "missing"—his conclusion—that DSS's search is inadequate—does not necessarily follow.  See Ancient Coin Collectors Guild, 641 F.3d at 514.  Palmieri's "missing" record argument thus fails to give rise to a material issue of fact regarding the adequacy of the DSS search.  The government's motion for summary judgment will be granted as to DSS.

### D.  Naval Criminal Investigative Service (NCIS)

Palmieri's request of NCIS sought all records pertaining to him, including those records indexed to his name, those held by the Department of the Navy Central Adjudication Facility, all those in his "full investigative case file," those relating to the "surveillance" against him in Bahrain, the full text of all "incident reports" filed against him by NCIS, and those records related to NCIS investigations of its own agents' misconduct.  See Ex. 1 to Cozza Decl. [ECF No. 27-18].  In response, NCIS located and produced Palmieri's investigative file, totaling 778 pages, many of which were redacted in whole or in part.  See Cozza Decl. [ECF No. 27-17] ¶¶ 38, 40.  NCIS claimed not to possess additional responsive records relating to Palmieri, id. ¶ 38, and Palmieri does not appear to take issue with NCIS's search, see Pl.'s More Definite Stmt. at 2–3; Pl.'s Opp'n at 5–6.

Palmieri's more definite statement does take issue with NCIS's redactions—albeit in the most general possible terms.  See Pl.'s More Definite Stmt. at 2–3.  There he requested that NCIS produce a Vaughn index "detailing [its] rationale for denying each specific piece of redacted information in the records."  Id. at 3.  He also asked this Court to "independently review both the original unredacted records and the Vaughn Index in order to determine if [NCIS's] refusal to

release the records is lawful." Id. at 4. NCIS subsequently submitted a Vaughn index as an attachment to its motion for summary judgment. See NCIS Vaughn Index [ECF No. 65-1]. Armed now with hundreds of pages of records, a NCIS declaration describing its search and redactions, and a Vaughn index addressing each redaction individually, Palmieri's opposition makes only one legal challenge to NCIS's handling of his request: that "NCIS is inappropriately applying FOIA exemptions to withhold records releasable to [him] pursuant to the Privacy Act." Pl.'s Opp'n at 5.

Palmieri's investigative file may indeed fall within the general scope of the Privacy Act, but NCIS has properly exempted it from that Act's disclosure requirements. Under Privacy Act exemption (j)(2), an agency that "performs as its principal function any activity pertaining to the enforcement of criminal laws" may exempt an entire system of records from the Act's disclosure requirements if the system consists of "information compiled for the purpose of a criminal investigation" and "associated with an identifiable individual." 5 U.S.C. § 552a(j)(2)(B). A Navy regulation provides that parts of the "NCIS Investigative Files System" may be exempt from disclosure "if the information is compiled and maintained by a component of the agency which performs as its principal function any activity pertaining to the enforcement of criminal laws." 32 C.F.R. § 701.128(m).

The records at issue here were compiled by NCIS, "the criminal law enforcement investigative branch of the United States Navy," in connection with its "criminal investigation" of Palmieri. Cozza Decl. ¶¶ 2, 48. Consequently, Palmieri's investigation file is not subject to the Privacy Act's disclosure requirements. Cf. Clemmons v. U.S. Army Crime Records Ctr., 2007 WL 1020827, at *3 (D.D.C. Mar. 30, 2007) (system of records maintained by the Army Criminal Investigation Division is exempt from Privacy Act); Butler v. Dep't of Air Force, 888 F. Supp.

174, 179 (D.D.C. 1995) (systems of records maintained by the Air Force Office of Special Investigations are exempt from Privacy Act).  FOIA provides Palmieri's only avenue to his investigative file, so NCIS may justify redactions to that file using FOIA exemptions.  Palmieri's only argument to the contrary—that NCIS has improperly applied Privacy Act exemption (k)(2)—gets him nowhere. [6]  Unfortunately for Palmieri, NCIS relies specifically on Privacy Act exemption (j)(2), rather than on (k)(2), to exempt the Investigative Files System from disclosure under the Privacy Act.  See 32 C.F.R. § 701.128(m)(3).  Palmieri's exemption (k)(2) argument is thus irrelevant.

Palmieri's filings contain no further challenges to NCIS's redactions.  The request for a Vaughn index in his more definite statement was effectively mooted when the government produced one.  Since receiving that index, Palmieri has said nothing regarding the propriety of NCIS's individual FOIA exemptions.  See Pl.'s Opp'n at 5–6.  Palmieri would understandably prefer that the Court develop exemption challenges for him, after an in camera review of NCIS's forty-six page Vaughn index and the 700-plus pages of records.  See Pl.'s More Definite Stmt. at 3.  But this Court has no obligation to take on that project.  See Schneider v. Kissinger, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005) (Litigants must do more than merely "mention a possible argument in the most skeletal way, leaving the court to do counsel's work . . . [A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace."); Gov't Accountability Project v. U.S. Dep't of Justice, 852 F. Supp. 2d 14, 27 n.5 (D.D.C. 2012) ("Although the Court has broad discretion to conduct in camera review of withheld documents, it is not required to do so.").  Palmieri was instructed to specify "exactly" those exemption claims

---

[6] Exemption (k)(2) allows agencies to exempt from disclosure systems of records containing "investigatory material compiled for law enforcement purposes, other than material within the scope of subsection (j)(2)." 5 U.S.C. § 552a(k)(2).

that he wished to challenge.  Because Palmieri's opposition has not addressed NCIS's individual exemptions, he has effectively conceded their legality.  See Brillhart v. FBI, 869 F. Supp. 2d 12, 15–16 (D.D.C. 2012); Maydak v. U.S. Dep't of Justice, 254 F. Supp. 2d 23, 41 (D.D.C. 2003).  NCIS too, then, is entitled to summary judgment.

### E.  Office of Personnel Management (OPM)

Finally, there is OPM.  Palmieri has sought from OPM all records pertaining to him.  He believes those records should include his "full investigative file," including transcripts of all interviews conducted by OPM, and the "full text and full details of all incident reports," including those filed under the "Foreign Influence" and "Personal Conduct" criteria.  See Ex. 1 to Simek Decl. [ECF No. 65-2].  In response, OPM produced "633 pages comprising a complete copy of Mr. Palmieri's investigative file."  Simek Decl. ¶ 8.  Six pages were partially redacted by OPM pursuant to various FOIA exemptions.  Id.  OPM also redacted information from four pages on behalf of the Financial Crimes Enforcement Network (FinCEN) and from one page on behalf of the National Security Agency (NSA).  See Ex. 7 to Simek Decl. at 1–2.

It is not clear whether Palmieri objects to the adequacy of OPM's search.  His opposition is entirely silent on the subject.  See Pl.'s Opp'n at 7–8.  And a FOIA plaintiff like Palmieri may concede the adequacy of an agency's search by failing to "specifically challenge" it in his opposition.  See Toensing v. U.S. Dep't of Justice, 890 F. Supp. 2d 121, 131 (D.D.C. 2012).  But even assuming Palmieri has preserved an objection to the search, he cannot successfully resist summary judgment on that issue.  The analysis unfolds in the now-familiar way.  To address Palmieri's request for "any and all" records maintained on him, OPM used Palmieri's personal identifiers to access the information in its various systems of records—the Personnel Investigation Records System, the Personnel Investigation Processing System, and the Central Verification

System.  See Simek Decl. ¶¶ 14–15.  Rather than develop any specific challenges to OPM's search methodology, Palmieri again complains only of "missing" records.  See Pl.'s More Definite Stmt. at 4 (seeking the RSI, incident reports, and interview transcripts).  Once again, it appears that some of Palmieri's "missing" records are not actually missing: according to OPM, Palmieri has been provided with "a complete copy of his RSI," and some records regarding OPM interviews.  See Simek Decl. ¶ 18.  And again, Palmieri fails to support his argument with citations to the record. Finally, then, even if some records are "missing" from OPM's search results, that alone will not suffice to raise an issue of material fact regarding the adequacy of OPM's search.  See Ancient Coin Collectors Guild, 641 F.3d at 514.  OPM is thus entitled to summary judgment on the adequacy of its search.

The Court reaches a different conclusion, however, on the issue of OPM's redactions.  At this point, only those redactions made on behalf of FinCEN remain at issue.  OPM has decided to abandon its own FOIA exemptions.  See Ex. 9 to Simek Decl. at 1 (reasoning that FOIA exemptions alone could not justify redacting Palmieri's file, which was subject to the separate disclosure requirements of the Privacy Act).  OPM has also released to Palmieri in full the only document redacted on behalf of NSA. See Ex. A to Def.'s Reply [ECF No. 67-1].  The government suggests, somewhat half-heartedly, that OPM's redactions on behalf of FinCEN are also moot, now that Palmieri has stipulated to the dismissal of his amended complaint's claim against FinCEN as a defendant.  See Pl.'s Opp'n at 7; Joint Stip. of Partial Dismissal (releasing "[a]ll denial of record claims against Defendant FinCEN").

The Court is not convinced.  Through the administrative process, OPM did inform Palmieri that challenges to its redactions on behalf of FinCEN would have to be appealed directly to FinCEN.  See Ex. 9 to Simek Decl. at 1–2.  But the government does not now argue that Palmieri's

claims concerning those redactions are unexhausted.  See Gov't's Mot. for Summ. J. at 10 n.6 (suggesting only that Palmieri's challenge to the redactions was abandoned along with his amended complaint's claim against FinCEN); Def.'s Reply at 8–9 (making no argument regarding exhaustion).  Palmieri's briefing makes clear, moreover, that he thinks the redactions remain at issue despite his stipulation to FinCEN's dismissal as a defendant.  See Pl.'s Opp'n at 7 (arguing OPM's redactions on behalf of FinCEN are not "legitimate").  The Court will give Palmieri the benefit of the doubt regarding the scope of his stipulation.  The government has engaged with the merits of OPM's exemption claims on behalf of FinCEN; so too will the Court.

However, the Court currently lacks sufficient information to conclude that those redactions were properly applied.  OPM claims that its redactions on behalf of FinCEN are justified under FOIA exemption 3, which covers matters "specifically exempted from disclosure by statute," if that statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue." 5 U.S.C. § 552(b)(3).  OPM thinks the Bank Secrecy Act exempts from disclosure the material withheld here.  "[R]eport[s] and records of reports" filed under the Bank Secrecy Act are indeed "exempt from disclosure under [FOIA]." 31 U.S.C. § 5319.  But OPM does not explain the relationship between the exempt BSA reports and the materials redacted in this case. Its declaration says only that the redactions "concerned a notice required under the Bank Secrecy Act to be added to any [OPM] investigations containing certain FinCEN information."  2d Simek Decl. [ECF No. 67-2] ¶ 4.  From one of the declaration's attachments, the Court can deduce that one or more of OPM's redactions conceal "Case Closing Transmittal" comments.  See Ex. 2 to 2d Simek Decl.; Simek Decl. ¶ 18.  But that label brings the Court no closer to understanding how the redacted comments relate to the FOIA-exempt reports filed under the BSA.  See Boyd v. Exec. Office for U.S. Attorneys, 87 F. Supp. 3d 58, 90 (D.D.C. 2015); cf. Ortiz v. U.S. Dep't of

Justice, 67 F. Supp. 3d 109, 118 (D.D.C. 2014) (concluding that the redacted information was "derived from reports generated pursuant to the Bank Secrecy Act"). Going forward, the government must do more to show that exemption 3, based on the Bank Secrecy Act, does indeed apply to the redacted information.

The same is true for OPM's claimed Privacy Act exemptions. "[W]hen a request for documents is [properly] made under both FOIA and the Privacy Act, the responding agency must demonstrate that the documents fall within some exemption under each Act." Boyd, 87 F. Supp. 3d at 86–87 (internal quotation marks omitted). OPM has acknowledged that the Privacy Act applies to the records Palmieri seeks, see Ex. 9 to Simek Decl. at 1, but thinks the records are exempt from disclosure under Privacy Act exemptions (j)(2) and (k)(2), see 2d Simek Decl. ¶ 4. In a regulation that the government does not cite, the Treasury has indeed exempted several systems of FinCEN records from Privacy Act disclosure. See 31 C.F.R. § 1.36. But once again, the government fails to explain the link between the exempt systems and the information redacted in this case. Absent some explanation, the Court cannot grant summary judgment for the government on these claims.

## CONCLUSION

For the reasons explained above, the government's motion for summary judgment will be granted as to Palmieri's FOIA and Privacy Act claims against DOS, DSS, and NCIS. As to ONI, the government's motion will be denied. And as to OPM, it will be denied in part. The Court will not, as Palmieri requests, set his remaining FOIA and Privacy Act claims for trial. Instead, the Court will order ONI to conduct a new, more comprehensive search and submit a new, more detailed declaration describing it. If ONI's new search locates responsive documents, and those documents are withheld or redacted under FOIA or the Privacy Act, ONI's supplemental

declaration should also describe the bases for those withholdings or redactions.  OPM must also submit a supplemental declaration providing further justification for the redactions it made on behalf of FinCEN.  Both agencies' declarations shall be filed by not later than August 19, 2016.  Thereafter, Palmieri and the government should discuss the possibility of resolving this case without further litigation.  But to the extent they are unable to do so, by September 16, 2016, the parties may submit supplemental memoranda, not to exceed 10 pages, addressing any issues remaining in dispute.

       A separate Order has issued on this date.

/s/<br>
_____<br>
JOHN D. BATES<br>
United States District Judge

Dated: <u>June 16, 2016</u>